**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | |
|---|---|
| KIMBERLY TERRELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    17-cv-2928-JPM-tmp |
| | ) |
| MEMPHIS ZOO, INC., | ) |
| | ) |
|     Defendant. | ) |

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S FIRST
MOTION TO COMPEL**

---

Before the court by order of reference is plaintiff Dr. Kimberly Terrell's First Motion to Compel, filed on April 18, 2018. (ECF Nos. 35, 38.) Defendant Memphis Zoo, Inc. ("Memphis Zoo") responded to this motion on May 2, 2018, and Dr. Terrell replied on May 7, 2018. (ECF Nos. 36, 39.) On May 15, 2018, the court ordered Memphis Zoo to produce records for *in camera* inspection. For the following reasons, Dr. Terrell's motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

Dr. Terrell was hired by Memphis Zoo on August 31, 2015, to serve as the Director of Research and Conservation. (ECF No. 1 at 2; ECF No. 27 at 2.) She apparently reported directly to Dr. Chuck Brady, Memphis Zoo's President and CEO. (ECF No. 39-2.) Dr. Terrell claims that, beginning in July of 2017, she grew

concerned that Dr. Brady was treating her differently from the men who worked for him. (ECF No. 1 at 3.) Among various examples of this behavior, she alleges that he arbitrarily criticized her work, made comments indicating that gender colored how he viewed her and other female employees, and subjected her to a performance review when none of the current or former male employees at her level were required to undergo such a review. (Id. at 3-4.) Dr. Terrell claims that she complained about this treatment to Dr. Brady and to the Chairman of the Board for Memphis Zoo. (Id. at 4-6.) She asserts that, after making her concerns known, Dr. Brady withheld a standard salary increase, was excessively critical of her work, and undermined her authority. (Id. at 5-7.) On September 14, 2017, Dr. Terrell's attorney contacted Memphis Zoo and informed it of Dr. Terrell's complaints of discrimination. (ECF No. 1 at 7; ECF No. 27 at 9.)

While Memphis Zoo acknowledges that Dr. Brady critiqued Dr. Terrell's work, it claims that every criticism was justified in light of Dr. Terrell's subpar efforts and tumultuous work relationships. (ECF No. 27 at 3-5.) Memphis Zoo denies that gender bias and retaliation played any role in its or Dr. Brady's actions. (Id. at 3-10.)

On November 1, 2017, Memphis Zoo either ordered or requested that Dr. Terrell not return to her office and that she

work remotely. (ECF No. 1 at 9; ECF No. 27 at 11.) On November 13, 2017, Dr. Terrell filed a charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission. (ECF No. 1 at 9; ECF No. 27 at 11.) On November 27, 2017, Memphis Zoo terminated Dr. Terrell's employment. (ECF No. 1 at 9; ECF No. 27 at 11.) Memphis Zoo has indicated that part of the basis for the termination was Dr. Terrell's violation of Memphis Zoo policies requiring her to cooperate with other employees, to perform her work in a respectful and timely manner, and to act in a manner that is not obviously detrimental to the best interest of Memphis Zoo. (ECF No. 35-3 at 5.) Dr. Terrell filed the present suit against Memphis Zoo on December 22, 2017. (ECF No. 1.) She asserts that Memphis Zoo's actions constitute gender discrimination and unlawful retaliation in violation of the Tennessee Human Rights Act ("THRA"). (Id. at 9.)

In the instant motion to compel, Dr. Terrell argues that Memphis Zoo has withheld discoverable materials, provided unsatisfactory responses to several of her interrogatories and document requests, improperly refused to respond to interrogatories and document requests, and improperly provided her with a disorganized mass of emails. (ECF No. 35.) Memphis Zoo responds that it has complied with all procedural requirements and that the information Dr. Terrell seeks is

either irrelevant, overly burdensome to produce, privileged, or protected by the work-product doctrine. (ECF No. 37.) Memphis Zoo has provided only one affidavit, which relates to how it produced the emails in response to Dr. Terrell's document requests. It has provided no affidavit relating to the documents listed on the privilege log.

## II.  ANALYSIS

### A.  Documents Listed on Memphis Zoo's Privilege Log

As a preliminary matter, Memphis Zoo argues that, because Dr. Terrell cites only Title VII cases and not THRA cases, she has not demonstrated that the information she seeks is discoverable. The THRA serves to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972." Tennessee Code Annotated § 4-21-101(a)(1). Consequently, courts apply the same framework of analysis to claims brought under the THRA that they apply to claims brought under Title VII. See Goree v. United Parcel Serv., Inc., No. 17-5139, 2017 WL 5664924, at *4 (6th Cir. Nov. 8, 2017) ("THRA claims. . . 'are governed by the same burden-shifting standards as the claims under Title VII.'" (quoting Wade v. Knoxville Utils. Bd., 259 F.3d 452, 464 (6th Cir. 2001))); Anderson v. Int'l Comfort Prod., LLC, No. 1:16-CV-00004, 2017 WL 3237319, at *4 (M.D. Tenn. July 31, 2017); Ferguson v. Middle Tennessee State Univ., 451 S.W.3d 375, 381

(Tenn. 2014).  Therefore, the court will consider the Title VII cases cited by Dr. Terrell in deciding the instant motion.

Dr. Terrell argues that the documents in Memphis Zoo's privilege log with the following Bates numbers are discoverable: Nos. 0079, 0107-09, 0110-12, 0169, 0170, 1262-63, 1267-69, 1270-73, 1278-82, 1283-90, 1291-93, 1294-96, 1297-99, 1306, 1311, 1313, 1314, and 1318-20.  Memphis Zoo claims that each of these documents is protected from discovery by the attorney-client privilege, the work-product doctrine, or both.

A federal court refers to state law to resolve issues of attorney-client privilege relating to state law claims.  <u>See</u> Fed. R. Evid. 501.  Currently, all of the claims in this case are state law claims, and neither party appears to contest the applicability of Tennessee law to those claims.  The court thus looks to the Tennessee law of attorney-client privilege.  However, this is done with the understanding that "the courts of Tennessee are often guided by state and federal common law when fashioning the contours of the attorney-client privilege."  <u>See</u> <u>Royal Surplus Lines Ins. v. Sofamor Danek Grp.</u>, 190 F.R.D. 463, 484 (W.D. Tenn. 1999).

"By statute and common law, Tennessee recognizes an evidentiary privilege that protects the confidentiality of attorney-client communications."  <u>State v. Buford</u>, 216 S.W.3d 323, 326 (Tenn. 2007).  According to T.C.A. § 23-3-105,

No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

Although T.C.A. § 23-3-105 refers to communications made to an attorney by a client, communications made by a client to an attorney are privileged to the extent those communications are based upon a client's confidential communication or would reveal the nature of a confidential communication if disclosed. Buford, 216 S.W.3d at 326 (citing Bryan v. State, 848 S.W.2d 72, 80 (Tenn. Crim. App. 1992)). Tennessee's codification of the privilege embodies common law principles, and the purpose of the privilege is to encourage "full and frank communication between attorney and client by sheltering these communications from disclosure." Culbertson v. Culbertson, 393 S.W.3d 678, 684 (Tenn. Ct. App. 2012); see also Bryan, 848 S.W.2d at 79 ("[T]he purpose of the privilege is to shelter the confidences a client shares with his or her attorney when seeking legal advice, in the interest of protecting a relationship that is a mainstay of our system of justice.").

"The [attorney-client] privilege is not absolute nor does it encompass all communications between the client and the attorney." Bryan, 848 S.W.2d at 80. The party asserting the

privilege bears the burden of showing that the purported privileged communications "were made in the confidence of the attorney-client relationship." Id. The party asserting the privilege must establish that

1. The asserted holder of the privilege is or sought to become a client;

2. The person to whom the communication was made is a member of the bar of a court, or his subordinate and in connection with this communication is acting as a lawyer;

3. The communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and

4. The privilege has been claimed and not waived by the client.

State v. Leonard, No. M2001-00368-CCA-R3CD, 2002 WL 1987963, at *7-8 (Tenn. Crim. App. Aug. 28, 2002) (quoting Royal Surplus Lines, 190 F.R.D. at 468-69); see also Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002) ("The communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential.").

As the work-product doctrine is a federal procedural rule, it applies to the state law claims in this case. See In re Professionals Direct Ins. Co., 578 F.3d 432, 438 (6th Cir. 2009). There are two types of work product. Upjohn Co. v.

United States, 449 U.S. 383, 401 (1981). The first type, opinion work product, involves an "attorney's mental impressions, opinions, conclusions, judgments, or legal theories." In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986). The Sixth Circuit has found that "absent waiver, a party may not obtain the 'opinion' work product of his adversary." In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294, 304-05 (6th Cir. 2002) (quoting In re Antitrust Grand Jury, 805 F.2d at 163-64). The second type, fact work product, consists of "all other work product." Restatement (Third) of the Law Governing Lawyers § 87; see also Upjohn, 449 U.S. at 400. Federal Rule of Civil Procedure 26 governs documents and tangible things and regulates the discovery of those items that "are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Attorneys may obtain discovery of another party's fact work product when there is waiver, see In re Antitrust Grand Jury, 805 F.2d at 163 (citing In re Special Sept. 1978 Grand Jury (II), 640 F.2d 49, 63 (7th Cir. 1980)), or when one party has shown "substantial need" for the evidence and "undue hardship" in obtaining it, Fed. R. Civ. P. 26(b)(3)(A)(ii).

As with the attorney-client privilege, once the party requesting access to another party's work product demonstrates

its relevance, the party claiming the protection of the work-product doctrine bears the burden of establishing that the doctrine applies. See Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 381 (6th Cir. 2009) (citing In re Powerhouse Licensing, LLC, 441 F.3d 467, 473 (6th Cir. 2006)). To make this showing, the party must show the sought-after information was the product of "a party's subjective anticipation of litigation" and that the anticipation was "objectively reasonable." Id. (citing United States v. Roxworthy, 457 F.3d 590, 594 (6th Cir. 2006)). When documents prepared in anticipation of litigation also serve an ordinary business purpose, "the burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'" In re Professionals Direct, 578 F.3d at 439 (quoting Roxworthy, 457 F.3d at 595).

1. Dr. Brady's Notes

The document with Bates No. 0079 is described in Memphis Zoo's privilege log as "[n]otes from a performance hearing with Kimberly Terrell August 25 — Summary prepared in anticipation of litigation." (ECF No. 35-5 at 2.) Dr. Terrell argues that these notes were not prepared in anticipation of litigation and, even if they were, they would not be protected by the work-product doctrine because they were not prepared by or for an attorney. Memphis Zoo argues that the document was prepared in

anticipation of litigation because the document was created after Dr. Terrell had notified Memphis Zoo of her discrimination concerns and after it had obtained counsel, attempted negotiations, and requested that Dr. Terrell work off-site.

With respect to Dr. Terrell's first argument, the court finds that Memphis Zoo has not shown that this document was prepared in anticipation of litigation. The document is a summary of a conversation that Dr. Brady had with Dr. Terrell during a performance review and his personal thoughts regarding what was discussed during the review. There is no indication in the document or the email to which it is attached that the document was made for any purpose other than a business purpose. Although Memphis Zoo points out that, at this point in time, there was a looming possibility of litigation, timing alone does not automatically grant a document the protection of the work-product doctrine. See In re Professionals Direct, 578 F.3d at 438-39 ("The fact that [the party] reasonably anticipated litigation at this point does not answer whether it prepared the disputed documents 'because of' litigation or not."). Because an ordinary business purpose was the driving force behind creation of this document, see id., Dr. Terrell's motion to compel the disclosure of this document is GRANTED.

2. Summary of Dr. Terrell's Conduct

The email and attachment with Bates Nos. 0107-09 are described in Memphis Zoo's privilege log as a "[s]ummary of Dr. Terrell's conduct prepared in anticipation of litigation." (ECF No. 35-5 at 4.) The parties' arguments concerning the discoverability of these documents are essentially identical to those raised for the document with Bates No. 0079. Having reviewed these documents, the court notes that, aside from the timing of the documents' creation, there is no indication that these documents were prepared in anticipation of litigation. Instead, the emails are intended to aid decision makers assessing whether to terminate Dr. Terrell's employment — a business purpose. Thus, the court finds that these documents are not protected by the work-product doctrine and are discoverable. Dr. Terrell's motion to compel the disclosure of these documents is GRANTED.

### 3. Discussion of Dr. Terrell's Actions

The documents with Bates Nos. 0110-12 are described in Memphis Zoo's privilege log as "[i]nternal communications regarding validity of Dr. Terrell's actions." (ECF No. 35-5 at 4.) The parties' arguments concerning the discoverability of these emails are essentially identical to those raised for the document with Bates No. 0079. However, unlike that document, these emails contain information indicating that the anticipation of litigation was the driving force behind their

creation.  The emails discuss how to approach settlement negotiations, how Memphis Zoo should utilize its attorney's services, and broader litigation tactics.  Although Dr. Terrell repeats her argument that these emails are discoverable because they were not prepared by or for an attorney, a document need not be prepared by or for an attorney in order for the work-product doctrine to apply.  The Federal Rules of Civil Procedure protect tangible items that have been prepared "by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Consequently, documents prepared by a party in anticipation of litigation are protected from discovery by Rule 26, regardless of whether the documents were prepared for the party's attorney.  As a result, the court finds that these documents are protected by the work-product doctrine.  Dr. Terrell has not shown substantial need to view these emails. Moreover, the court finds that these emails, which were also sent to Memphis Zoo's trial counsel, are protected by the attorney client privilege.  Therefore, Dr. Terrell's motion to compel the disclosure of these emails is DENIED.

    4.  Communications with Maria Leggett

    The emails with Bates Nos. 0169, 0170, 1262, 1267-69, 1270-73, 1278-82, 1283-90, and 1297-99 are described in Memphis Zoo's privilege log as protected by the attorney-client privilege because they contain communications with Maria Leggett, a member

of Memphis Zoo's Board of Directors, who is also Assistant
General Counsel for AutoZone. (ECF No. 35-5 at 5, 12 to 13.)
Dr. Terrell argues that these emails are not privileged because
there is no indication that Memphis Zoo was Leggett's client
and, even if it was, when participating in these emails she was
acting in a business capacity, not a legal capacity. Memphis
Zoo argues that Leggett played multiple roles when dealing with
this matter, but her primary role was that of legal advisor.

In order for Memphis Zoo's communications with Leggett to
be considered privileged, Memphis Zoo must first show that it
"is or sought to become a client" of Leggett's. See Leonard,
2002 WL 1987963, at *7 (quoting Royal Surplus Lines, 190 F.R.D.
at 468-69). Memphis Zoo has not made this showing. Rather,
Memphis Zoo proposes that, because Leggett's role on the Board
of Directors was to provide "legal advice and legal guidance to
the other members of the board," she should be treated as
Memphis Zoo's attorney. (ECF No. 37 at 17.) However, providing
legal advice, by itself, does not make the communication
privileged — there must also be an attorney client relationship
— and Memphis Zoo has not demonstrated the existence of the
required relationship. Therefore, the court finds that
communications between Leggett and Memphis Zoo are not
privileged.

The privilege log also describes several of the previously mentioned emails and related emails with Bates Nos. 1263–64, 1291–93, and 1294–96 as protected by the work-product doctrine. (Id. at 12–13.) Memphis Zoo has not expanded upon this argument. And, the court notes that these emails deal with how best to inform certain members of the Board of Directors of the agenda for a telephone conference at which the board would decide whether to terminate Dr. Terrell's employment — a business purpose. Thus, the court finds that these emails are not protected by the work-product doctrine.

The court does find, however, that the documents with Bates Nos. 1297–99 consist entirely of privileged emails. Consequently, Dr. Terrell's motion to compel discovery of all of these documents, except those with Bates Nos. 1297–99, is GRANTED.

5.   Board Meeting Notes

The emails with Bates Nos. 1306, 1311, 1313, and 1318–20 are described in Memphis Zoo's privilege log as notes of a board meeting that occurred on November 22, 2017, that are protected by the work-product doctrine. (ECF No. 35-5 at 14 to 15.) This meeting was the telephone conference at which members of the board voted to terminate Dr. Terrell. Dr. Terrell argues that these notes are not protected by the work-product doctrine because the notes were mandatory under Memphis Zoo's bylaws and

made in the normal course of business.  Memphis Zoo argues that these emails are protected because, but for its reasonable expectation of litigation, the meeting would never have occurred.

Without the likelihood of litigation, these emails may never have been created, but that fact does not place the emails under the protection of the work-product doctrine.  For the doctrine to apply, the anticipation of litigation must have been the driving force behind the preparation of the emails.  See Fed. R. Civ. P. 26(b)(3)(A); In re Professionals, 578 F.3d at 439.  Here, the emails at issue were primarily created, not in anticipation of litigation, but to record the board's discussion at a meeting dealing with whether to terminate an employee — a business purpose.  Therefore, the court finds that the documents are not protected by the work-product doctrine.

Nonetheless, like the communications with Leggett discussed in the previous section, there are portions of the documents containing irrelevant and/or privileged information.  The partial paragraph at the top of the page with Bates No. 1306-4 (beginning with the words "It doesn't mean that we" and ending with "external stakeholders"), the first full paragraph on the page with Bates No. 1306-9 (beginning with the word "David" and ending with "separate"), and the first full paragraph on the page with Bates No. 1306-12 (beginning with the word

"Instructions" and ending with "you know now") all contain descriptions of opinions expressed by Memphis Zoo's counsel that is privileged. Therefore, while Dr. Terrell's motion to compel disclosure of these documents is GRANTED, Memphis Zoo may redact the previously mentioned privileged information and other iterations of this information from the documents.

6.  <u>Media Coverage Report</u>

The document with Bates No. 1314 is described in Memphis Zoo's privilege log as "Media Hits Thus Far." Dr. Terrell argues that the document does not appear to be related to pending litigation and, as a result, is not protected by the work-product doctrine. Memphis Zoo responds that the document was prepared due to the litigation and that Dr. Terrell has not shown that she faces undue difficulty acquiring the information contained in the document.

Having reviewed the document, the court finds that, since it contains no information related to any claim by Dr. Terrell or any defense that Memphis Zoo might bring, it is not relevant to Dr. Terrell's suit. <u>See</u> Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). In addition, the report of media coverage contains information that Dr. Terrell could easily acquire by performing her own research. For these reasons, Dr.

Terrell's motion to compel disclosure of this document is DENIED.

## B. Memphis Zoo's Responses to Dr. Terrell's Interrogatories and Document Requests

Dr. Terrell argues that Memphis Zoo improperly responded to Interrogatories Nos. 4, 5, and 9, and Requests Nos. 5 and 13. Memphis Zoo claims that it has properly responded to Interrogatory No. 4 and Request No. 5 and that the remaining interrogatories and document requests are improper.

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Under Rule 26(b), parties may discover information concerning "any nonprivileged matter that is relevant to any party's claim or defense"; however, information must be limited in scope by an number of factors including its "proportional[ity] to the needs of the case," "the parties' relative access to relevant information," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26 requires courts to restrict the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c)(i). The party requesting the information has the burden of showing its importance and the party from whom

the information is requested has the responsibility of explaining how the request is unreasonable. See, e.g., Shah v. Metro. Life Ins. Co., No. 2:16-CV-1124, 2018 WL 2309595, at *3 (S.D. Ohio May 22, 2018); see also Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

1. Disclosing Board Members Present at Termination Meeting

In Interrogatory No. 4, Dr. Terrell requests that Memphis Zoo name each person who decided to ask her not to return to work on November 1, 2017, each person who decided to fire her, and each person who was consulted about these two decisions. (ECF No. 35-1 at 6.) Memphis Zoo responded to this interrogatory by stating that Leah Jensen and Dr. Brady decided to ask her not to return to work after consulting with counsel and members of the Board of Directors. (ECF No. 35-3 at 6.) Memphis Zoo also responded that Jensen and the Board of Directors consulted concerning her termination and the board then voted to terminate her. (Id.) In later correspondence concerning this interrogatory, Dr. Terrell specified that she is asking for the identities of the board members who participated in these decisions. (ECF No. 37-1 at 3.) Dr. Terrell argues that Memphis Zoo erred by not identifying which board members were consulted about or participated in these decisions. Memphis Zoo argues that it complied with Interrogatory No. 4

because the interrogatory only asks for the name of "person(s)" who had a role in the decisions, and the definitions section of the interrogatories defines "person" to include various forms of business entities and agents in addition to "natural person." (ECF No. 37 at 4 (quoting ECF No. 35-1 at 1, 3.)) Memphis Zoo further argues that Dr. Terrell mischaracterized her own interrogatory because the interrogatory does not ask Memphis Zoo to "identify" the individuals who played a role in these decisions. Memphis Zoo claims that such a request would "substantially increase the scope and complexity of her interrogatory because the term 'identify' . . . is defined six different ways in Dr. Terrell's interrogatory definitions." (Id.)

The court finds that Memphis Zoo has not appropriately responded to Interrogatory No. 4. Thus, Dr. Terrell's motion to compel Memphis Zoo to supplement its response to this interrogatory is GRANTED.

2. Disclosing Information About Individuals Alleged to Have Violated Memphis Zoo Policies

In Interrogatory No. 5 and Request No. 13, Dr. Terrell requests that Memphis Zoo identify and produce relevant documents for every individual from January 1, 2013, to the present who Memphis Zoo alleges violated any of the same policies that it alleges she violated and for which she was

terminated.  (ECF No. 35-1 at 6; ECF No. 35-2 at 8.)  Memphis
Zoo responded that these requests are vague, overly broad,
unduly burdensome, and seek irrelevant privileged information.
(ECF No. 35-3 at 7; ECF No. 35-4 at 11.)  Dr. Terrell argues
that she seeks relevant comparator information because the way
male employees were treated prior to her employment is pertinent
to the allegations in her complaint.  Memphis Zoo argues that
policy violations that occurred before Dr. Terrell was employed
are not relevant and that the interrogatory is too expansive,
requesting the disciplinary history of "potentially hundreds of
Memphis Zoo employees."  (ECF No. 37 at 7.)

Plaintiffs proving discrimination claims based upon
circumstantial evidence must, among other showings, demonstrate
that they were "treated differently than similarly-situated,
non-protected employees."  Golden v. Mirabile Inv. Corp., No.
17-5346, 2018 WL 1168253, at *4 (6th Cir. Mar. 6, 2018) (quoting
DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004), overruled
on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167
(2009)); see also Familoni v. The Univ. of Memphis, No.
W200402077COAR3CV, 2005 WL 2077660, at *3 (Tenn. Ct. App. Aug.
29, 2005) (noting that this showing is also required for
discrimination claims brought under the THRA); see also Bobo v.
United Parcel Serv., Inc., 665 F.3d 741, 753 (6th Cir. 2012)
("The refusal of a defendant to disclose requested comparator

information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine."). Courts attempting to reconcile the need for broad discovery with the need for relevant and reasonable discovery have relied upon a number of methods including random sampling of comparators, Lee v. Cleveland Clinic Found., 676 F. App'x 488, 501-02 (6th Cir. 2017), limiting the span of time from which the responding party has to provide information, Escalera v. Bard Med., a Div. of C.R. Bard, Inc., No. 4:16-CV-00121-JHM, 2017 WL 4012966, at *4 (W.D. Ky. Sept. 12, 2017), and limiting the discovery to comparators who held similar positions to the plaintiff, Fleming v. Honda of Am. Mfg., Inc., No. 2:16-CV-421, 2017 WL 4296314, at *5 (S.D. Ohio Sept. 28, 2017).

Dr. Terrell has shown that Memphis Zoo's treatment of male employees prior to her hiring is relevant to her allegations of discrimination. Due to the lack of specificity in Memphis Zoo's response, Memphis Zoo has not shown that the five-year span of her discovery request is overly burdensome. Instead, it has speculated that the request could "potentially" require Memphis Zoo to provide information about hundreds of employees. Nonetheless, because of the broad wording of the policies that Memphis Zoo claims Dr. Terrell violated, a response to Dr.

Terrell's discovery request would likely include employees at all levels of Memphis Zoo's employment structure — many of whom would not qualify as comparators. Therefore, while Dr. Terrell's motion to compel a response to Interrogatory No. 5 and Request No. 13 is GRANTED, the court limits the discovery that Memphis Zoo must provide to employees in her Conservation and Research Department, and employees who hold or have held a position at the same level as Dr. Terrell on the organizational chart. (ECF No. 39-2.)

### 3. Disclosing Information About Individuals who Reported Directly to Dr. Brady

In Interrogatory No. 9 and Request No. 5, Dr. Terrell requests that Memphis Zoo provide the identification, job title, gender, date of evaluation and supporting documentation of the evaluation, date and quantity of salary increases, disciplinary history, and, if terminated, the reason for termination, of every individual from January 1, 2013, to December 31, 2017, who reported directly to Dr. Brady. (ECF No. 35-1 at 7; ECF No. 35-2 at 6.) Memphis Zoo responded that these requests are vague, overly broad, unduly burdensome, and seek irrelevant and privileged information. (ECF No. 35-3 at 9; ECF No. 35-4 at 7.) Memphis Zoo also claimed that it had provided documents relevant to Request No. 5. (ECF No. 35-4 at 7.) Dr. Terrell argues that this information is relevant because of Memphis Zoo's statement

that her performance review provided part of the basis for her termination and her requests are not overbroad because "only a handful of employees" report directly to Dr. Brady. (ECF No. 35 at 6.) Memphis Zoo argues that information for workers employed before Dr. Terrell is not relevant.

Dr. Terrell has shown that information concerning individuals who were employed before her is relevant to her case. And, Memphis Zoo has not shown that so many people reported directly to Dr. Brady as to make unduly burdensome the number of comparators it would have to identify. Even so, Dr. Terrell has not shown the relevancy of several of the pieces of information she requests concerning these comparators, including the disciplinary history of each person and the reason for leaving Memphis Zoo. Therefore, while Dr. Terrell's motion to compel response to Interrogatory No. 9 is GRANTED, the court limits the scope of the required response to the following relevant categories of information: identities of employees, job titles, gender, dates and supporting documentation of performance reviews,[1] and dates of employment. Dr. Terrell's

_____

[1]One of the central allegations of Dr. Terrell's complaint is that "Dr. Brady met with Dr. Terrell to provide a performance review. Dr. Brady had not held any such reviews with Dr. Terrell in the previous two years of her employment, and none of the male employees at Dr. Terrell's level underwent a performance review." (ECF No. 1 at 4.) Therefore, discovery relating to the existence of any performance reviews is warranted discoverable.

motion to compel supplementary disclosures to Memphis Zoo's response to Request No. 5 is DENIED.

## C. Format for Electronic Discovery that Memphis Zoo Provided to Dr. Terrell

Dr. Terrell argues that Memphis Zoo violated Fed. R. Civ. P. 34 by responding to her document requests with approximately four thousand electronically stored documents lacking any organizational pattern. Memphis Zoo claims that it has complied with Rule 34 because it produced the documents in the form they are kept in the usual course of business and has provided an affidavit from the documents' custodian affirming its claim. (ECF No. 37-3.) Memphis Zoo further argues that it would be inequitable to require it to reorganize this discovery when it previously offered Dr. Terrell an opportunity to collaborate on the gathering and production of this information. (ECF No. 37 at 9.)

Rule 34 requires that parties produce electronically stored information either in the form that it is maintained in the usual course of business or in a form organized to correspond to categories in the discovery request. Fed. R. Civ. P. 34(b)(2)(E). "A party need not produce the same electronically stored information in more than one form." Id. Once a party demonstrates that it has produced discovery in the form it is maintained in the ordinary course of business, the party has met

the requirements of Rule 34. See State Farm Mut. Auto. Ins. Co. v. Universal Rehab Servs., Inc., No. 15-10993, 2016 WL 5369610, at *1 (E.D. Mich. Sept. 26, 2016); Appalachian Land Co. v. EQT Prod. Co., No. 7:08-CV-00139-KKC, 2009 WL 10689269, at *1 (E.D. Ky. June 24, 2009); FenF, LLC v. Healio Health Inc., No. 5:08CV404, 2008 WL 11379993, at *4 (N.D. Ohio Dec. 11, 2008); Clark Constr. Grp., Inc. v. Eagle Amalgamated Servs., Inc., No. 01-2478-DV, 2007 WL 9710165, at *6 (W.D. Tenn. Aug. 1, 2007). Here, Dr. Terrell has not provided any information to refute Memphis Zoo's showing that the discovery was provided in the form it was kept in the ordinary course of business. Thus, Dr. Terrell's motion to compel Memphis Zoo to designate which documents correspond to which request is DENIED.

## III. CONCLUSION

For the foregoing reasons, Dr. Terrell's First Motion to Compel is GRANTED in part and DENIED in part. To the extent the court has granted the motion, all documents and responses to discovery requests shall be produced within fourteen days from the date of this order.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

July 3, 2018
Date