# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **KIMBERLY TERRELL,** | ) |
| Plaintiff, | ) |
| v. | ) 17-cv-2928-JPM-tmp |
| **MEMPHIS ZOO, INC.,** | ) |
| Defendant. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S FIRST MOTION TO COMPEL

Before the court by order of reference is defendant Memphis Zoo, Inc.'s ("Memphis Zoo") First Motion to Compel, or in the Alternative, Request for Sanctions, filed on June 14, 2018. (ECF Nos. 45, 46.) Plaintiff Dr. Kimberly Terrell filed a response on June 27, 2018. (ECF No. 47.) Memphis Zoo filed a reply on July 5, 2018, and Dr. Terrell filed a sur-reply on July 12, 2018. (ECF Nos. 49, 51.) On August 1, 2018, the court will hold a hearing concerning the section in Memphis Zoo's motion dealing with sanctions. This order addresses the remaining sections of Memphis Zoo's motion. For the following reasons, Memphis Zoo's motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

Dr. Terrell was hired by Memphis Zoo on August 31, 2015, to serve as the Director of Research and Conservation. (ECF No. 53

at 2; ECF No. 27 at 2.) She apparently reported directly to Dr. Chuck Brady, Memphis Zoo's President and CEO. (ECF No. 39-2.) Dr. Terrell claims that, beginning in July of 2017, she grew concerned that Dr. Brady was treating her differently from the men who worked for him. (ECF No. 53 at 3.) Among various examples of this behavior, she alleges that he arbitrarily criticized her work, made comments indicating that gender colored how he viewed her and other female employees, and subjected her to a performance review when none of the current or former male employees at her level were required to undergo such a review. (Id. at 3-4.) Dr. Terrell claims that she complained about this treatment to Dr. Brady and to the Chairman of the Board for Memphis Zoo. (Id. at 4-6.) She asserts that, after making her concerns known, Dr. Brady withheld a standard salary increase, was excessively critical of her work, and undermined her authority. (Id. at 5-7.) On September 14, 2017, Dr. Terrell's attorney contacted Memphis Zoo and informed it of Dr. Terrell's complaints of discrimination. (ECF No. 53 at 7; ECF No. 27 at 9.)

While Memphis Zoo acknowledges that Dr. Brady critiqued Dr. Terrell's work, it claims that every criticism was justified in light of Dr. Terrell's subpar efforts and tumultuous work relationships. (ECF No. 27 at 3-5.) Memphis Zoo denies that gender bias and retaliation played any role in its or Dr. Brady's actions. (Id. at 3-10.)

On November 1, 2017, Memphis Zoo either ordered or requested that Dr. Terrell not return to her office and that she work remotely. (ECF No. 53 at 9; ECF No. 27 at 11.) On November 13, 2017, Dr. Terrell filed a charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission. (ECF No. 53 at 9; ECF No. 27 at 11.) On November 27, 2017, Memphis Zoo terminated Dr. Terrell's employment. (ECF No. 53 at 9; ECF No. 27 at 11.) Memphis Zoo has indicated one of its reasons for terminating Dr. Terrell was her violation of Memphis Zoo policies requiring her to cooperate with other employees, to perform her work in a respectful and timely manner, and to act in a manner that is not obviously detrimental to the best interest of Memphis Zoo. (ECF No. 35-3 at 5.)

Dr. Terrell filed the present suit against Memphis Zoo on December 22, 2017, and amended her complaint on July 13, 2018. (ECF Nos. 1, 53.) She asserts that Memphis Zoo's actions constitute gender discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. (ECF No. 53 at 10.) For relief, Dr. Terrell seeks back pay, lost benefits, reinstatement to employment (or, if reinstatement is not feasible, front pay and the value of future lost benefits), as well as compensatory and punitive damages. (Id.)

In the instant motion to compel, Memphis Zoo argues that Dr. Terrell has provided unsatisfactory responses to several of its interrogatories and document requests, failed to sufficiently describe the documents cited in her responses by listing their corresponding Bates numbers, provided only vague descriptions of the documents that she claims it already possesses, and improperly responded to its discovery requests by providing it with a disorganized mass of documents. (ECF Nos. 45, 49.) Dr. Terrell responds that she has complied with all procedural requirements and that the information Memphis Zoo seeks is irrelevant, overly burdensome to produce, disproportional to the needs of the case, or does not exist. (ECF Nos. 47, 51.) Memphis Zoo has filed an affidavit and Dr. Terrell has filed a declaration associated with this motion; however, both documents are focused on the motion for sanctions and are not applicable to the issues addressed in this order. (ECF Nos. 45-5, 47-3.) Dr. Terrell has not filed an affidavit addressing the organizational structure of the documents she produced in response to Memphis Zoo's discovery requests.

## II. ANALYSIS

### A. Consultation Requirement

As a preliminary matter, Dr. Terrell argues that Memphis Zoo's motion to compel should be denied for not complying with Local Rule 7.2(a)(1)(B), which requires that the moving party consult with the nonmoving party prior to filing a motion to compel and

include a certificate of consultation with its motion. Arguably, Memphis Zoo's initial motion to compel did not meet every requirement of Local Rule 7.2. For instance, it did not include a certificate of consultation. Nevertheless, the court finds that emails exchanged between the parties have satisfied the purpose of Local Rule 7.2 by resolving all issues that could be resolved without the court's intervention.[1] (ECF Nos. 45-1, 47-1, 49-2.)

---

[1]On February 27, 2018, the court noted in a scheduling order that all motions to compel discovery in this case are to be filed and served within thirty days of the default or of the service of the response, answer, or objection that is the subject of the motion. (ECF No. 23 at 4.) On April 18, 2018, Memphis Zoo served Dr. Terrell with its interrogatories and document requests. (ECF Nos. 33, 34.) On May 15, 2018, Dr. Terrell responded to Memphis Zoo's interrogatories. (ECF No. 45 at 2.) On May 18, 2018, Dr. Terrell responded to Memphis Zoo's document requests and later supplemented her responses on May 31, 2018, June 4, 2018, and June 6, 2018. (Id. at 2–3.) On Friday, June 8, 2018, Memphis Zoo's attorneys emailed Dr. Terrell's attorneys a list of what they claimed were deficiencies in Dr. Terrell's responses to Memphis Zoo's interrogatories and discovery requests. (ECF No. 45-1 at 3.) In this email, the attorneys asked for Dr. Terrell to provide her supplemental responses by June 12, 2018. (Id. at 3–4.) Dr. Terrell's attorneys responded that, due to scheduling conflicts, four days was not sufficient time for them to properly respond to Memphis Zoo's claims of discovery deficiencies. (Id. at 3.) They requested that Memphis Zoo file a motion to extend the previously-mentioned deadline from June 15, 2018, to June 25, 2018. (Id.) Memphis Zoo refused this request and, subsequently, filed the instant motion to compel on June 14, 2018. (Id. at 1–2; ECF No. 45.) On June 15, 2018, Dr. Terrell emailed Memphis Zoo a substantive response to its June 8 email intended to resolve the discovery deficiencies. (ECF No. 47-1.) On June 20, 2018, Memphis Zoo replied to this response and indicated that certain deficiencies that it raised in its June 14 motion to compel were still unresolved by Dr. Terrell's June 15 email. (ECF No. 49-2.)

-5-

Therefore, the court will address the merits of Memphis Zoo's motion to compel.

**B.    Responses to Interrogatories and Document Requests**

1.    <u>Violations of Memphis Zoo Policies</u>

In Interrogatory No. 11, Memphis Zoo asked Dr. Terrell to describe in detail every instance during her employment when she violated one of its policies or procedures. (ECF No. 45-2 at 15.) Dr. Terrell responded, "None." (Id.) Memphis Zoo argues that this response is in bad faith because Memphis Zoo has proof that it previously reprimanded her for violating its social media policy. (ECF No. 45 at 6.) The court finds that Dr. Terrell cannot be compelled to admit she violated a policy that she does not believe she violated and, therefore, Dr. Terrell's concise response is sufficient. <u>See</u> <u>King v. Hamblen Cty. Bd. of Educ.</u>, No. 2:14-CV-00249-JRG, 2016 WL 9175508, at *4 (E.D. Tenn. June 8, 2016) (noting that the plaintiff "cannot be compelled to produce something that does not exist"); <u>Peterson v. Ne. Local Sch. Dist.</u>, No. 3:13CV00187, 2015 WL 5013360, at *3 (S.D. Ohio Aug. 25, 2015), <u>report and recommendation adopted</u>, No. 3:13-CV-L 87, 2015 WL 5793944 (S.D. Ohio Sept. 30, 2015) ("[I]t should be enough for the party to respond by saying that a particular document is not in existence or that it is not in the responding party's possession, custody, or control." (quoting 8B Fed. Prac. & Proc. Civ. § 2213

(3d ed.))). Accordingly, this section of Memphis Zoo's motion to compel is DENIED.

2. <u>Individuals Who Lived With Dr. Terrell</u>

As part of Interrogatory No. 14, Memphis Zoo asked Dr. Terrell to identify all of the individuals with whom she has lived for the past three years. (ECF No. 45-2.) Due to information on one of her leases, Memphis Zoo believes her response to this interrogatory to be deficient and moves the court to compel her to disclose additional information; however, it appears Dr. Terrell is in the process of resolving this matter. (ECF No. 49-2 at 3.) Therefore, the court finds that this section of Memphis Zoo's motion to compel is moot.

3. <u>Travel History</u>

In Interrogatory No. 15, Memphis Zoo asked Dr. Terrell to describe in detail all work-related trips that she took in 2017, including her destination, reason for traveling, identification of her travel companions, and identification of the individuals who played a part in planning the trip. (ECF No. 45-2 at 17.) Dr. Terrell objected that the interrogatory was overly broad, unduly burdensome, and vague, but nonetheless, provided Memphis Zoo with emails describing aspects of her past travels and informed Memphis Zoo where it might find travel receipts and airfare itineraries already in its possession. (<u>Id.</u> at 17-18.) Memphis Zoo argues that this response was insufficient because the documents Dr.

Terrell cited provided incomplete answers to the interrogatory. (ECF No. 45 at 7-8.)

The Federal Rules of Civil Procedure require courts to limit the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Memphis Zoo argues that information about Dr. Terrell's travel history is relevant because "Dr. Terrell's decision to travel to Panama, and elsewhere, instead of remaining on property left the Memphis Zoo understaffed." (ECF No. 45 at 7.) With respect to Dr. Terrell's trip to Panama, Memphis Zoo's motion to compel a response to this interrogatory is granted. However, Memphis Zoo's motion does not explain how information regarding other unidentified trips relates to any of the claims or defenses in the case. (ECF No. 27 at 12-15.) Thus, this section of Memphis Zoo's motion to compel is GRANTED in part.

4. Job Searches

In Document Request No. 7, Memphis Zoo asked that Dr. Terrell provide it with all documents related to her attempts to obtain employment from the day Memphis Zoo hired her to the present. (ECF No. 45-3 at 6.) Dr. Terrell responded by directing Memphis Zoo to certain documents and has also supplemented her response by submitting additional documents. (ECF Nos. 45-3, 49-2.) Memphis Zoo argues that Dr. Terrell's responses are insufficient because

it knows she applied to more positions than the ones for which she has provided documentation. (ECF No. 49-1 at 6.) According to Memphis Zoo, this information is relevant because it shows Dr. Terrell was aware that she was unable to "adequately perform in her role as a Director of Memphis Zoo." (ECF No. 45 at 8.)

Contrary to Memphis Zoo's argument, the court finds that this information is not relevant to any of the claims or defenses in the case. As evidenced by some of the emails Dr. Terrell provided in discovery, individuals search for jobs for numerous reasons unrelated to their personal opinions about their qualifications for their current position. (ECF No. 51-3 at 1 ("I'm not actively looking to leave Memphis but it's a good opportunity and close to Doug.")) Furthermore, to the extent that any of the information Memphis Zoo seeks could be construed as relevant, Dr. Terrell has provided Memphis Zoo with all of the documents she could find related to its request. (ECF No. 51-1 at 3.) Therefore, this section of Memphis Zoo's motion to compel is DENIED.

5. Tax Returns

In Document Request No. 12, Memphis Zoo asked Dr. Terrell to provide copies of her tax returns for the past three years. (ECF No. 45-3 at 7.) Dr. Terrell refused to disclose this information. (Id. at 8.) Memphis Zoo argues that the information is relevant because Dr. Terrell has placed her financial earning capacity at issue by indicating that she will seek lost pay and benefits. (ECF

No. 45 at 8.) Dr. Terrell argues that only her 2017 tax return is relevant to the case and, even then, requiring her to disclose it would be redundant when she has already disclosed W-2 and 1099 forms for 2017. (ECF No. 47 at 9–11.)

Dr. Terrell encourages the court to adopt a two-part test that several other courts have applied when analyzing the discoverability of tax returns. The test requires the moving party to show both that the tax returns are relevant and that the information in them is not obtainable elsewhere. See, e.g., Shelbyville Hosp. Corp. v. Mosley, No. 4:13-CV-88, 2017 WL 1155046, at *4 (E.D. Tenn. Mar. 27, 2017) (collecting cases). The Sixth Circuit has not yet ruled on the applicability of the test but has noted that financial documents "are not 'confidential' in the legal sense." DeMarco v. C & L Masonry, Inc., 891 F.2d 1236, 1240 (6th Cir. 1989). In the absence of a Sixth Circuit opinion, the court believes Fed. R. Civ. P. 26 provides sufficient guidance on this matter. See Queen v. City of Bowling Green, No. 1:16CV-00131-JHM, 2017 WL 4355689, at *7 (W.D. Ky. Sept. 29, 2017). "Courts typically find that tax returns fall within the scope of Rule 26(b)(1) where a party's income is in issue, as, for example, where a claim for lost wages has been asserted." Id. Dr. Terrell's claim for lost wages and her duty to mitigate did not arise until her termination on November 27, 2017. Id. Thus, the court requires that Dr. Terrell disclose only her 2017 tax return. Per

her request, the court will allow her to redact her spouse's information from her 2017 tax return. See Westbrook v. Charlie Sciara & Son Produce Co., No. 07-2657 MA/P, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008), aff'd, No. 07-2657, 2008 WL 11417501 (W.D. Tenn. Dec. 9, 2008). For these reasons, this section of Memphis Zoo's motion to compel is GRANTED in part.

6. Social Media Accounts

In Document Request No. 24, Memphis Zoo asked Dr. Terrell to provide complete copies of all her social media accounts. (ECF No. 45-3 at 12 to 13.) Dr. Terrell refused on the grounds that the request sought information beyond the scope of the issues and was unduly burdensome. (Id.) Memphis Zoo argues that this information is discoverable and relevant to the case because Dr. Terrell treated social media as an important tool during her employment and, also supposedly, violated Memphis Zoo's social media policy. (ECF No. 45 at 10.)

"[T]here is no dispute that social media information may be a source of relevant information that is discoverable." Georgel v. Preece, No. 0:13-CV-57-DLB, 2014 WL 12647776, at *3 (E.D. Ky. Feb. 28, 2014) (quoting Reid v. Ingerman Smith LLP, No. CV 2012-0307 ILG MDG, 2012 WL 6720752, at *1 (E.D.N.Y. Dec. 27, 2012)); Howell v. Buckeye Ranch, Inc., No. 2:11-CV-1014, 2012 WL 5265170, at *1 (S.D. Ohio Oct. 1, 2012); Tompkins v. Detroit Metro. Airport, 278 F.R.D. 387, 388-89 (E.D. Mich. 2012). Nonetheless, this

discoverability does not grant parties "a generalized right to rummage at will through information that [an opposing party] has limited from public view." T.C on Behalf of S.C. v. Metro. Gov't of Nashville, No. 3:17-CV-01098, 2018 WL 3348728, at *14 (M.D. Tenn. July 9, 2018) (quoting Potts v. Dollar Tree Stores, Inc., No. 3:11-CV-01180, 2013 WL 1176504, at *3 (M.D. Tenn. Mar. 20, 2013)). To obtain an opposing party's private social media information, the party seeking the information must still comply with Fed. R. Civ. P. 26 by showing that the information it seeks is relevant and proportional to the needs of the case. Id. at *14-15. Consequently, courts have denied blanket requests for the contents of social media accounts and instead required that parties bring narrowed requests for information related to the issues in the case. See id.; Prado v. Thomas, No. 3:16-CV-306, 2017 WL 5151377, at *2 (S.D. Ohio Oct. 19, 2017).

Here, the court finds that Memphis Zoo has not shown how the information it seeks from Dr. Terrell is relevant and proportional to the needs of the case. The scope of Memphis Zoo's request is far too broad, seeking what is likely to be a vast quantity of private information that would have no bearing on this case. Thus, this section of Memphis Zoo's motion to compel is DENIED.

**C. Organization of Dr. Terrell's Responses**

1. <u>Dr. Terrell's Descriptions of Documents She Produced</u>

Memphis Zoo argues that Dr. Terrell has caused confusion by referencing documents that she produced without including Bates numbers for these documents. (ECF No. 45 at 11; ECF No. 49-1 at 5.) It explains that this ambiguity is especially troublesome because some of the documents she references exist in multiple versions and some of her references could refer to entirely different documents. (ECF No. 45 at 11.) A party responding to interrogatories may direct the requesting party to consult business records if, among other conditions, the responding party "specif[ies] the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33 (d). Memphis Zoo has demonstrated that Dr. Terrell has not provided it with sufficient information for it to identify the documents to which she refers. Thus, this section of Memphis Zoo's motion to compel is GRANTED, and Dr. Terrell is instructed to supplement her responses to Memphis Zoo's discovery requests by providing the corresponding Bates numbers for the documents she cites.

2. Dr. Terrell's Descriptions of Memphis Zoo's Documents

Memphis Zoo also argues generally that the way Dr. Terrell describes some of the documents she claims it already possesses is confusing. However, Memphis Zoo has not clarified which of Dr. Terrell's descriptions are confusing. Before Dr. Terrell can provide further identifiers for these documents, Memphis Zoo must

specify which of her descriptions are too vague. Thus, this section of Memphis Zoo's motion to compel is DENIED.

### 3. Dr. Terrell's Organization of Documents She Produced

Memphis Zoo argues that Dr. Terrell has failed to label documents that she produced to correspond to categories in its requests. When responding to document production requests, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E). When producing electronically stored information in response to a request that does not specify a form of production, the party must "must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Id. Dr. Terrell has not stated either in her briefing or her affidavit that she produced documents in the same form that they were kept in the usual course of business. Accordingly, this section of Memphis Zoo's motion to compel is GRANTED, and Dr. Terrell is instructed to supplement her document production by indicating how the documents correspond to specific categories in Memphis Zoo's document requests.

## III. CONCLUSION

For the foregoing reasons, Memphis Zoo's First Motion to Compel is GRANTED in part and DENIED in part. To the extent the court has granted the motion, all documents and responses to

discovery requests shall be produced within fourteen days from the date of this order.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

July 20, 2018
Date